United States Bankruptcy Court

Northern District of Illinois

Eastern Division

| | |
|---|---|
| In re:<br><br>Tristin C. Hicks and Parissa A. Boston,<br><br>Debtors. | Bankruptcy No. 15 B 26479<br><br>Chapter 7 |
| Patrick S. Layng, United States Trustee,<br><br>Plaintiff<br><br>v.<br><br>Tristin C. Hicks and Parissa A. Boston,<br><br>Defendants. | Adversary No. 16 A 00320 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding, filed in a voluntary chapter 7 bankruptcy case, is
before the Court for decision after trial. The debtors in the bankruptcy case are a
married couple. The U.S. Trustee brought this adversary proceeding in order to object
to the debtors' discharge under 11 U.S.C. §§ 727(a)(2) and 727(a)(4). The complaint
alleged that the defendants had knowingly and fraudulently concealed assets and made
false statements under oath in their bankruptcy case. The defendants did not dispute at
trial that they owned jewelry and other property not listed in their bankruptcy
schedules, but denied having had knowledge or intent to conceal such property or
make false oaths in the case. According to the defendants, their attorneys had told them
that the assets in question did not need to be listed in their schedules.

Following trial, all parties having rested, the Court now makes and enters the
following Findings of Fact and Conclusions of Law. For reasons stated below, the U.S.
Trustee met his burden of proving by preponderance of the evidence that the
defendants knowingly and fraudulently concealed valuable property and made false
oaths in connection with their bankruptcy case. The defendants, in turn, failed to
present credible evidence to dispute overwhelming circumstantial evidence that they
had the requisite knowledge and intent. The defendants will therefore each be denied a

discharge in their bankruptcy case. Separate Judgments will be entered accordingly under §§ 727(a)(2) and 727(a)(4).

## FINDINGS OF FACT

Plaintiff, Patrick S. Layng, is the duly appointed United States Trustee for the Northern District of Illinois. The U.S. Trustee maintains his principal place of business within this district at 219 S. Dearborn St., Room 873, Chicago, Illinois.

Defendants, Tristin Hicks and his wife, Parissa Boston (collectively referred to as the "Defendants" or individually as "Mr. Hicks" and "Ms. Boston"), are the Debtors in the underlying Chapter 7 bankruptcy case, Case No. 15-26479. Their address when the bankruptcy case was filed was 8 Iowa, Apt. 2M, Oak Park, IL 60302. Defendants' bankruptcy case was filed on August 3, 2015 (the "Petition Date").

### Acquisition of Concealed Assets Prior to Bankruptcy Filing

On March 18, 2014, Mr. Hicks purchased a pair of 14 carat white gold diamond earrings at a retail cost of $4,539.00. (PX 2 ¶¶ 36, 37, 38)[1]

On December 29, 2014, Mr. Hicks purchased two luxury watches. One was a Movado Series 800 at a retail cost of $995.00, and the second was a Movado Bold at a retail cost of $650.00. (PX 2 ¶¶ 40, 41.)

In or about December of 2014, Mr. Hicks gifted the Movado Bold Watch to Tiffany Willis. (PX 2 ¶¶ 40, 43.)

In or around June of 2015, the Defendants contemplated filing for bankruptcy. (PX 16 at 8:2-8; PX 17 at 4:17-21.) Around June of 2015, the Defendants visited The Semrad Law Firm, LLC for a bankruptcy consultation. (PX 16 at 10:9-11:5)

---

[1] References to "PX" relate to Plaintiff Exhibits as identified on the United States Trustee's Exhibit List [Adv. Dkt. No. 24].

On June 2, 2015, the Defendants opened a credit card account with Comenity Bank/Harlem Furniture. (PX 3 at UST Bate Page 0044.)

In June of 2015, the Defendants purchased several pieces of new furniture from Harlem Furniture for the aggregate purchase price of $6,514. (PX 1 ¶ 52.)

On June 30, 2015, Ms. Boston purchased wedding rings for her and Mr. Hicks with a retail value of about $3,200 on credit. Specifically, she purchased a 14 carat white gold diamond Neil Lane Bridal Set at a retail cost of $2,599, and a 10 carat white gold Frederick Goldman Wedding Band at a retail cost of $689.00. (PX 8 at UST Bate Pages 0108, 0112, 0115; PX 1 ¶ 46.)

Defendants married sometime in or around July of 2015, before their bankruptcy case was filed in early August of 2015. (*See* Hicks Tr. Test., Feb. 21, 2017.)

Before filing for bankruptcy, the Defendants owned wearing apparel which they estimated was worth more than $3,000, although Mr. Hicks later testified that the true value was probably around $1,500. (PX 17 at 13:2-14:9; Hicks Tr. Test., Feb. 21, 2017.)

### Preparation of Defendants' Bankruptcy Petition and Documents

On July 31, 2015, the Defendants met with Rigoberto Garcia, Esq. ("Mr. Garcia"), an attorney with The Semrad Law Firm, to complete a bankruptcy intake form. (*See* Garcia Tr. Test., Hicks Tr. Test., Feb. 21, 2017.)

The intake form of the Semrad firm required that the Defendants list "anything of value that exceeds $1,000 or more[.]" The Defendants did not disclose their recently acquired jewelry or furniture in response to this question, or list any other assets in this section of the intake form. (*See* PX 9 at UST Bate Page 0118; Garcia Tr. Test., Feb. 21, 2017.)

According to Mr. Garcia, his general practice and procedure where a question is left unanswered is to ask the client and fill out information given orally into the form, or

3

in his notes, and disclose such information in the client's schedules or other bankruptcy papers. (Garcia Tr. Test., Feb. 21, 2017.) Based on his notes, the intake form, and his general practice and procedure, Mr. Garcia denied having been informed of any jewelry or furniture not listed, or having told the Defendants that such property did not need not to be listed. (Garcia Tr. Test., Feb. 21, 2017.)

At trial, Mr. Hicks acknowledged that the jewelry and furniture had not been listed by them in their bankruptcy intake form, but claimed that their attorneys knew of the jewelry. He also testified that he did not list their recently purchased furniture, but argued that he had listed the furniture as debt in a different section. (Hicks Tr. Test., Feb. 21, 2017.) Ms. Boston testified that they had filled out the bankruptcy intake form as best as they could, and she thought that in listing the debts for their recently purchased jewelry and furniture was sufficient. She testified that her attorneys told her that the property in question did not need to be listed, or that they had misunderstood their attorneys' instructions. (Boston Tr. Test., Feb. 21, 2017.)

On August 3, 2015, the Defendants returned to The Semrad Law Firm and met with Anthony Kudron, Esq. ("Mr. Kudron") to go over and finalize their petition, schedules and statements for filing. (Kudron Tr. Test., Feb. 21, 2017.)

At that meeting, Mr. Kudron and the Defendants reviewed documents needed to file their bankruptcy petition. The documents included the voluntary petition, Schedules A, B, C, D, E, F, G, H, I, and J (the "Schedules"), and the Statement of Financial Affairs (the "SOFA") (collectively referred as the "Bankruptcy Documents"). (*See* PX 3; Kudron Tr. Test., Feb. 21, 2017.)

Also at that meeting, Mr. Kudron provided the Defendants with The Semrad Law Firm's "Chapter 7 Disclaimers." After reading the disclaimers, the Defendants placed their initials next to each of the "Chapter 7 Disclaimers." (*See* PX 10; Kudron Tr.

4

Test., Feb. 21, 2017.) The Defendants each placed their initials next to the disclaimer which states:

> I agree that in the preparation of my bankruptcy petition and schedules that I have disclosed to the Semrad Law Firm, LLC all my debts, sources of income, assets, personal property, real estate, transfers of real estate, or any property over the past 4 years, and all expenses I have.

(PX 10 ¶ 2.)

Mr. Kudron also provided the Defendants with the written "Disclosure Pursuant to 11 U.S.C. § 527(a)(2)." (*See* PX 11; Kudron Tr. Test., Feb. 21, 2017.) The Disclosure Pursuant to 11 U.S.C. § 527(a)(2) states, in pertinent part:

> You are notified:
> All information that you are required to provide with a petition and thereafter during a case under the Bankruptcy Code is required to be complete, accurate, and truthful.
> All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case…
> [omitted]
> Information that you provide during your case may be audited pursuant to provisions of the Bankruptcy Code. Failure to provide such information may result in dismissal of the case under this title or other sanction, including criminal sanctions.

(PX 11.) The Defendants signed the "Disclosure Pursuant to 11 U.S.C. § 527(a)(2)." (*See id.*)

Mr. Kudron testified that his general practice is to go over the Bankruptcy Documents with the client, request that they initial each page after reviewing it, and ask that the client sign and authorize such documents to be filed as complete, truthful and accurate. (Kudron Tr. Test., Feb. 21, 2017.) The Defendants initialed each page of the documents reviewed that day, including Schedule B listing their personal property. (*See* PX 12.)

After reviewing the information on the Bankruptcy Documents, the Defendants, with the assistance of Mr. Kudron, filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 3, 2015 (the "Petition Date"). (PX 1 ¶ 8; Kudron Tr. Test., Feb. 21, 2017.)

### The Bankruptcy Case Through Meeting of Creditors

Mr. Kudron, along with Janna L. Quarless, Esq., ("Ms. Quarless") and John P. Wonais, Esq., ("Mr. Wonais") of The Semrad Law Firm filed their appearances on behalf of the Defendants in the bankruptcy case. (PX 1, ¶ 9)

David P. Leibowitz, Esq., was appointed as Chapter 7 Trustee in the Defendants' bankruptcy case.

On August 3, 2015, the Defendants signed and filed their Declaration Concerning Debtor's Schedules (the "First Declaration") where they declared, under penalty of perjury, that "[they] read the foregoing summary and schedules, consisting of 25 sheets, and that they are true and correct to the best of [their] knowledge, information, and belief." (PX 4; PX 1 ¶ 11.)

On August 3, 2015, the Defendants also signed and filed their Declaration under Penalty of Perjury by Individual Debtor (the "SOFA Declaration"), in which they declared, under penalty of perjury, that "[They] declare under penalty of perjury that [they] have read the answers contained in the foregoing statement of financial affairs and any attachment thereto and that they are true and correct." (PX 5.)

On September 11, 2015, the Defendants filed Amended Schedules B and C. (PX 1, ¶ 12)  Mr. Wonais prepared the Defendants' Amended Schedules B and C. (*See* PX 7; Wonais Tr. Test., Feb. 23, 2017.)

6

The Defendants' Schedule B and Amended Schedule B are substantially similar. The Defendants amended Schedule B to include their expected tax refund. (Compare PX 3 at UST Bate Page 0035 and PX 7; *see also* PX 16 at 16:17-23.)

Contemporaneous with the filing of their Amended Schedules B and C, the Defendants filed their Declaration Concerning Debtor's Schedules – Amended (the "Second Declaration") in which they declared, under penalty of perjury, "[they] read the foregoing summary and schedules, consisting of 25 sheets, and that they are true and correct to the best of [their] knowledge, information, and belief." (See PX 7 at UST Bate Page 0092; PX 1 ¶ 13.)

On Amended Schedule B, the Defendants stated that, as of the Petition Date, they had an interest in seven checking, savings, or other financial accounts with balances totaling $34.00. (PX 1 ¶ 14.)

On their Amended Schedule B, the Defendants stated that, as of the Petition Date, they owned household goods and furnishings with an aggregate value of $500.00. (PX 1 ¶ 15.)

On their Amended Schedule B, the Defendants stated that, as of the Petition Date, they owned wearing apparel with an aggregate value of $700. (PX 1 ¶ 16.)

On their Amended Schedule B, the Defendants stated that, as of the Petition Date, they did not own any furs and jewelry. (PX 1 ¶ 15.)

On their Schedule F, the Defendants stated that, as of the Petition Date, creditor Comenity Bank/Harlem Furniture held an unsecured nonpriority claim in the amount of $6,514.00 and the account with Comenity Bank/Harlem Furniture was opened on June 2, 2015. (PX 1 ¶ 18.)

On their Schedule F, the Defendants stated that, as of the Petition date, creditor Weisfield Jewelers/Sterling Jewelers Inc. held an unsecured nonpriority claim in the

amount of $3,560.00 and the account with Weisfield Jewelers/Sterling Jewelers Inc. was opened on June 1, 2015. (PX 3 at UST Bate Page 0049.)

On their SOFA, the Defendants stated that they had not made any gifts or contributions with an aggregate value in excess of $200 within the one (1) year preceding the Petition Date. (PX 1 ¶ 20.)

On their SOFA, the Defendants stated that they had not made any transfers within two years immediately preceding the commencement of their bankruptcy case. (PX 3 at UST Bate Page 0061.)

On September 16, 2015, the Defendants appeared for the 341 Meeting with their attorney, Mr. Wonais. (PX 1 ¶ 22.)  At the outset of the 341 Meeting, the Chapter 7 Trustee administered the oath and the Defendants were duly sworn.  (PX 15 at 2:5-9)

At the 341 Meeting, the Chapter 7 Trustee asked the following questions and the Defendants gave the following responses:

> MR. LEIBOWITZ: Do your bankruptcy petitions and those schedules show all of your assets and all of your debts?
> MR. HICKS: Yes. MS. BOSTON: Yes.
> MR. LEIBOWITZ: Are there any changes that either of you want to make to your bankruptcy papers?
> MS. BOSTON: No.

(PX 15 at 4:9-17.)

On September 18, 2015, the Chapter 7 Trustee filed a no-asset report. (PX 1 ¶ 23.)

**Reaffirmation of Jewelry Debt**

Less than one month later on October 12, 2015, the Debtors with help of their counsel filed a Reaffirmation Agreement with Sterling Jewelers d/b/a Kay Jewelry.  The amount agreed to was $3,560.85, asserted to be secured by collateral worth that much and consisting of "Miscellaneous Jewelry."

8

Why was that not a red flag for their counsel?  Having denied possession of any jewelry on their schedules, this Agreement meant that they likely did possess jewelry that had not been scheduled.  However, that fact was not reported by counsel to the Trustee, schedules were not amended to reflect possession of jewelry, and details as to the jewelry possessed was not obtained by counsel from the Debtors.

Sterling Jewelers, Inc. had been scheduled as a creditor for $3,500 on an account opened June 1, 2015 ("List Active 7/23/15") for $3,500.  That alone might have warranted inquiry by counsel as to what had been purchased a month before schedules were filed.  The same might be said about the schedule showing debt for recent purchase of furniture.  But certainly the Reaffirmation Agreement should have caused any competent counsel to inquire as to what jewelry was involved, whether it should have been scheduled, and whether it should be reported to the Trustee.  Despite all the details that bankruptcy counsel must be alert to, that volume of work cannot excuse the duty of staying alert to the client's interest and duty to the estate.

The jewelry involved appears to be the very jewelry that Debtors failed to schedule, a failure that partly causes loss of their discharge.  We can only speculate whether diligent inquiry by counsel would have led to correction of the schedules in that or other regards.  Counsel have duties to provide alert service to clients; they are not mere scriveners:

> In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

IL R S CT RPC Rule 2.1; U.S. Dist. Ct. Rules N.D. Ill., LR 83.50; *see* IL R S CT RPC Rule 2.1 cmt. n. 5 ("In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is

9

likely to result in substantial adverse legal consequences to the client, the lawyer's duty

to the client under Rule 1.4 may require that the lawyer offer advice if the client's course

of action is related to the representation. A lawyer ordinarily has no duty to initiate

investigation of a client's affairs or to give advice that the client has indicated is

unwanted, but a lawyer may initiate advice to a client when doing so appears to be in

the client's interest.").

It must also be said, however, that it primarily remains the duty of all creditors to

disclose valuables to their counsel and to read their schedules for accuracy and

completeness. Therefore, these Debtors are themselves responsible for any inaccuracies

or omissions such as those identified in this case.

**Further Proceedings**

The Chapter 7 Trustee filed a notice of withdrawal of the no-asset report on June

2, 2016. (*See* Dkt. No. 47, Case No. 15-26479.)

In or around September or November of 2015, a legal assistant from the U.S.

Trustee's Office reviewed the Defendants' Bankruptcy Documents. The legal assistant

noticed on Schedule F that the Defendants purchased jewelry, furniture, and other

consumer luxury goods just weeks prior to the bankruptcy filing. The legal assistant

also noted that the Defendants failed to list these items on their Schedule B and

Amended Schedule B. (Such observation could as earlier noted be made by alert

counsel for debtors.)

On March 9, 2016, The U.S. Trustee conducted a Rule 2004 examination of Ms.

Boston. (PX 1 ¶ 26.) Ms. Boston was represented by counsel at her examination.

On March 11, 2016, Ms. Quarless, who was at Ms. Boston's Rule 2004

examination, filed a Motion to Withdraw as Attorney for Debtors on behalf of The

Semrad Law Firm. (PX 18.) The Semrad Law Firm asserted that it could no longer

represent the Defendants because of a non-waivable conflict that resulted from Ms. Boston's testimony at her Rule 2004 examination.

On March 15, 2016, the Court entered an order allowing The Semrad Law Firm to withdraw from the bankruptcy case. (*See* Dkt. No. 35, Case No. 15-26479.) Defendants have since been without counsel and represented themselves in the trial of this proceeding.

On March 15, 2016, the Court also entered an order compelling Mr. Hicks "to appear on Thursday, March 17, at 1:00 pm., at the offices of the United States Trustee…" for his Rule 2004 examination. (PX 19.) Mr. Hicks appeared pro se for his 2004 examination on March 17, 2016. (PX 1 ¶ 29.)

On July 5, 2016, the Chapter 7 Trustee filed a motion requiring the Defendants to turn over the unscheduled jewelry. On July 12, 2016, an order was entered requiring that the Defendants turn over the unscheduled jewelry to the Chapter 7 Trustee by July 26, 2016. (PX 13.)

To date, the Defendants have failed to comply with the Court's order requiring them to turn over the unscheduled jewelry, except for items surrendered in open court. Upon direct order during his testimony, Mr. Hicks turned over a set of diamond earrings and a watch on the first day of trial.

**The 2004 Examination of Boston**

On March 9, 2016, Kimberly Bacher, Esq., ("Ms. Bacher") from the Office of the United States Trustee, conducted a Bankruptcy Rule 2004 examination of Ms. Boston (the "Boston 2004 Examination"). Ms. Boston appeared with her attorney, Ms. Quarless, and Kristen Wasieleski, Esq., of The Semrad Law Firm. (PX 1 ¶ 26; *See also* Quarless Tr. Test., Feb. 21, 2017.)

At the outset of the Boston 2004 Examination, the court reporter administered the oath and Ms. Boston was duly sworn. (PX 16 at 4:1-2.)

During the Boston 2004 Examination, Ms. Boston testified that she understood that when the Petition and Schedules were filed, she and Mr. Hicks were required to list all of their assets and liabilities. (PX 16 at 17:14-18.)

During the Boston 2004 Examination, Ms. Boston testified that Schedule B correctly reflected that the Defendants owned household furniture worth $500.00 as of the Petition Date. (PX 16 at 20:12-20.)  In response to further inquiry, Ms. Boston gave the following testimony:

> Q.      Okay. On Schedule B, item number 4, it lists household goods and furnishings, including audio, video, and computer equipment. And you listed used household goods and furniture valued at $500. Do you see that?
> A.      Correct.
> Q.      And what does this item include?
> A.      This is, like, just a bed set and our couch.
> Q.      What kind of bed set?
> ….
> A.      Yeah, it's a three piece set.
> Q.      So it's a bed and two dressers?
> A.      Yes.
> Q.      And what are you valuing the bed and two dressers at?
> A.      They're about 500 altogether.
> Q.      So what do you value the couch at?
> A.      The couch is about two-something. So I think this amount is incorrect.
> Q.      Two something being how much?
> A.      Like, $200.
> Q.      So the only furniture you have is a bed set and a love seat?
> A.      And our dining table. I don't know where the 500 came from because it's a little bit more than that. We have a dining set, the couch, and the three piece set.
> …

12

Q.    And how are you figuring out what the value would be?
A.    That's how much we paid for it.
Q.    You paid $300 for the dining set?
A.    Yeah. And then the couch and the three piece bed set. So it's all valued probably a little bit under a thousand dollars.

(PX 16 at 20:12 – 22:12.) (emphasis added)

Later in the examination, Ms. Bacher specifically asked Ms. Boston about the amount of $6,514in debt due to Comenity/Bank Harlem Furniture listed on the Defendants' Schedule F. Ms. Boston provided the following testimony in response:

Q.    There is an account listed on the next page on page 20 to Harlem Furniture. It looks like it's your account?
A.    That's the furniture.
Q.    So this looks like it was $6,514.
A.    Oh, I do have – I do have a painting. I have a painting with the – that's an Eiffel Tower painting that was about $400.
Q.    Ok. So that –
A.    I forgot about that one.
Q.    -- brings it up to almost $1,400. How did we get to $6,500?
A.    With the loveseat. The couches – the couch – I'm sorry. The couches -- they are 2,000. The couches are automatic. I just thought about that. The couches are automatic so they have – you can, like, let the seat back.

(PX 16 at 32:2-33:17.)

In an attempt to explain why she did not disclose the furniture at the outset of the examination, Ms. Boston testified that she forgot about the couches because they were held in storage. (PX 16 at 33:18-22.) However, her testimony was later contradicted by Mr. Hicks' testimony at his examination. He testified that:

Q.    In Oak Park. So we have the couches, we have the bedroom set, everything is in your apartment.
A.    Yeah
Q.    Was anything ever taken out of the apartment?
A.    No.

13

> Q.     So from the time you got the items delivered, which was probably
> June 2015?
> A.     Yeah.
> Q.     They've never left the apartment.
> A.     No, no.

(PX 17 at 20:24-21:10)

In an attempt to explain the omissions of the furniture on the Defendants'

Schedule B, Ms. Boston shifted blame to her attorneys at The Semrad Law Firm. Ms.

Boston testified:

> Q.     When the case was filed, you had two couches in the apartment,
> correct?
> A.     Yes.
> Q.     Why didn't you list them?
> A.     I did – we did.
> Q.     And that's listed as a debt. When Schedule B requested that you list
> what you own, you listed your household items, and you did not list two
> couches that were
> $6,000?
> A.     He told us not to list our furniture.
> Q.     Who told you?
> A.     The attorney – my previous attorney for Janna.

(PX 16 at 34:13-35:2.)

In this case, Ms. Boston's testimony that her previous attorneys, who she later

identified as Mr. Kudron and Mr. Wonais, instructed her to omit substantial furniture

from Schedule B was not credible and was convincingly contradicted by testimony of

the lawyers.

During the Boston 2004 Examination, Ms. Boston testified that Schedule B

correctly reflected that the Defendants did not own any furs or jewelry as of the Petition

Date. Ms. Boston provided the following testimony:

14

> Q.    Number 7, a request that you list furs and jewelry. That was listed as none; is that correct?
> A.    Correct.

(PX 1, ¶ 53; PX 16 at 24:21-24.)  In response to further inquiry, Ms. Boston testified to the following:

> Q.    And does Tristin [Mr. Hicks] have any furs or jewelry?
> A.    No.

(PX 16 at 26:24-27:1.)

Later in the examination, Ms. Bacher specifically asked Ms. Boston about the amount of $3,560 in debt due Weisfield Jewelers/Sterling Jewelers on Schedule F. Ms. Boston testified to the following:

> Q.    There's an item listed for Weisfield Jewelers/Sterling Jewelers. It looks like it's a joint debt for $3,560. What was this for?
> A.    The wedding band.
> Q.    So can you please be very specific in what this item includes?
> …
> A.    It's a Neil Lane, like a crested diamond. And then Tristin's wedding band, a band. It's just a plain silver band.

(PX 16 at 39:2-17.)

Ms. Bacher also inquired about the records that the U.S. Trustee's Office received from Sterling Jewelers Inc. (PX 8.)  Ms. Bacher asked Ms. Boston about Mr. Hicks' watches and the 14 carat white gold diamond earrings. Despite Ms. Boston's previous testimony that Mr. Hicks does not own any furs or jewelry and Schedule B was correct as filed, she later testified to the following:

> Q.    And what would this be?
> A.    I'm not sure. **I do know he does own a Movado watch**, but – I don't know if he would – how he purchased it. We just got a combined account for our rings.
>     (…)

Q.    So you don't know if your husband currently has a pair of diamond earrings?

A.    **No, I know he does,** but this is not something that – I don't know why he wouldn't have listed it.

(PX 16 at 47:18-49:20) (emphasis added)

In regards to further inquiry about the 14 carat white gold Neil Lane Bridal Set and the 10 carat white gold Frederick Goldman Wedding Band, Ms. Boston explained, while under oath to tell the truth, to Ms. Bacher that her attorneys informed the Chapter 7 Trustee. The following questions and testimony occurred:

Q.    Did you tell your bankruptcy trustee you were returning this jewelry?

A.    Yes.

Q.    And – I'm Sorry. You communicated that to your attorney who communicated that to the bankruptcy trustee?

A.    Yes, that's what happened.

(PX 16 at 28:18-24.)

Immediately following the above exchange, Ms. Quarless, who was the attorney representing Ms. Boston at the 2004 Examination, stated on the record "No, that's not what happened." (PX 16 at 29:1-2.) Ms. Quarless later testified at her deposition that she believed that Ms. Boston gave a response that was inaccurate.[2] (*See* Quarless Tr. Test., Feb. 21, 2017.)

Again, Ms. Boston attempted to explain the omissions of the jewelry by shifting blame on The Semrad Law Firm. Ms. Boston provided the following testimony:

Q.    It said furs and jewelry as of August 3rd, and you checked none. And you told me that you read the paper work –

A.    Yes.

Q.    --- and you read all the information?

---

[2] Ms. Boston and Mr. Hicks were present at Janna Quarless' deposition on October 6, 2016.

A.      We checked none because of that's what our attorney told us to do. That's what I'm saying. It has to be off his – what he told us to add because we told him we had wedding rings. And we told him that Tristin owned diamond rings, but it wasn't part of the credit card, I guess, that we were putting into our bankruptcy because we put the joint account into the bankruptcy.

(PX 16 at 55:7-21.)

At the Boston Examination, Ms. Boston testified that Schedule B correctly reflected that the Defendants' owned wearing apparel in the amount of $700.00 as of the Petition Date. (PX 16 at 23:23-24:2.) Ms. Boston gave the following testimony:

Q.      Item number 6 lists wearing apparel. It says, clothing and shoes, and you listed the value at $700; is that correct?
A.      Correct.
Q.      And what does this item include?
A.      This is just, like, for Tristin – so for work, we have to wear the product to sell it. So it's just like his shoes and jeans. I haven't made any major purchases in clothing.

(PX 16 at 23:23-24:8.) The foregoing testimony is inconsistent with Mr. Hicks' testimony at his examination. Mr. Hicks provided the following testimony regarding the Defendants' wearing apparel:

Q.      The next item lists wearing apparel. It lists clothing and shoes valued at $700.
A.      Okay.
Q.      What does this include?
A.      Is this for both of us?
Q.      Yes, this is a joint bankruptcy case. So for both of you and your wife it says clothing and shoes for $700.
A.      That's not right either.
Q.      What is that supposed to be?
A.      Honestly, I don't know. I work for Nordstrom, so I have a lot of clothes, so... I honestly couldn't tell you. I have shirts, ties, blazers.

Q.    Do you have any article of clothing that costs more than a hundred dollars?

A.    Yes.

Q.    Would you say you have articles of clothing in the aggregate of more than a thousand dollars?

A.    Yes.

Q.    More than $2,000?

A.    Yes.

Q.    More than $3,000?

A.    Yes.

(PX 17 at 13:2-25.)

Despite the foregoing, no evidence was offered by an expert witness to show the market value of the clothing held by Debtors when they filed their bankruptcy case. Therefore, the court cannot find, as Plaintiff argued, that they misrepresented the value of their clothing.

**The Hicks 2004 Examination**

On March 17, 2016, Ms. Bacher from the Office of the United States Trustee conducted a Bankruptcy Rule 2004 examination of Mr. Hicks (the "Hicks 2004 Examination"). Mr. Hicks appeared at the Hicks 2004 Examination without an attorney. (PX 1, ¶ 29.)

At the outset of the Hicks 2004 Examination, the court reporter administered the oath and Mr. Hicks was duly sworn. (PX 2 at 2:8-10.)

During the Hicks 2004 Examination, Mr. Hicks testified that he understood the questions that were being asked of him in the Schedules. (PX 17 at 8:19-21.)

During the Hicks 2004 Examination, Mr. Hicks testified that the amount of $500 listed on their Schedule B for household furniture was incorrect because the Defendants owned at least $6,500 in new furniture. (PX 17 at 10:3-11:22.) Ms. Boston testified this amount is "a little bit under a thousand dollars." (PX 16 at 22:12.)

During the Hicks 2004 Examination, Mr. Hicks testified that the amount of $700 for wearing apparel on their Schedule B was incorrect. (PX 17 at 13:7-10.) Ms. Boston testified that the $700 amount was correct. (PX 16 at 23:23-24:8.)

During the Hicks 2004 Examination, Mr. Hicks testified that he and Ms. Boston owned jewelry and Schedule B incorrectly showed they did not own any jewelry as of the Petition Date. (PX 17 at 14:10-13.). Ms. Boston testified that Schedule B correctly showed that they did not own any furs or jewelry. (PX 16 at 24:21-24.)

During the Hicks 2004 Examination, Mr. Hicks testified that he completed an intake form with The Semrad Law Firm in which he disclosed all of the Defendants' jewelry and furniture. (PX 17 at 24:11-25:4.)  Mr. Hicks provided the following testimony:

> Q.    Did you fill out an in-take form when you met with your attorney? Did he give you a form to fill out that would list all of your assets and your liabilities?
> A.    Yes. Yes. And that's where you could see where we put everything. I mean, from top to bottom, tickets, everything we put on there.
> Q.    I'm not talking about your debts. I'm talking about a form that you would list your assets. So a form where you would list your earrings. You listed your rings. You listed these couches. You listed all of your designer clothing. Did you have a form like that?
> A.    Yes.
> Q.    And you listed all of your jewelry and all of your –
> A.    Everything we had, everything.
> Q.    All the furniture.
> A.    All the furniture, yes.

(PX 17 at 24:11-25:4.)

The foregoing testimony cannot be reconciled with the documentary record.  The Semrad Law Firm produced an intake form to the U.S. Trustee after the Hicks 2004 Examination. (*See* PX 9.) The intake form had to reference to the undisclosed assets.

19

Aside from their self-serving testimony at their Rule 2004 Examinations, the Defendants have failed to proffer any credible explanation for the omissions on their intake form and Bankruptcy Documents.

During the Hicks 2004 Examination, Mr. Hicks testified that he reviewed the information in the Defendants' Schedules and SOFA before they were filed with the court. (PX 17 at 7:12-20) Mr. Hicks testified to the following:

> Q.    Let me just finish the question. Did you review the information in the schedules and statement of financial affairs before they were filed with the court?
> A.    Yes.
> Q.    So you have firsthand knowledge of the information contained in the schedules and statement of financial affairs?
> A.    Yes. Yeah.

(PX 17 at 7:12-20)

Later in the examination, Mr. Hicks was asked why he would file a Schedule B with figures that he knew were false. Mr. Hicks, who previously testified that he reviewed the information on the Schedules before they filed the documents, then claimed that he did not review the information on the Schedules. He provided the following contradictory testimony:

> Q.    Why would you only put in $700 for number six?
> A.    I honestly don't remember telling him that, if you want me to be honest with you.
> Q.    But if you saw these before they were filed with the court, why wouldn't you bring that to his attention and correct it?
> A.    I didn't see these numbers filed before the court. This is – this is completely wrong.

(PX 17 at 14:1-9.)

Lastly, in an attempt to explain the omissions on the Schedules, Mr. Hicks resorted to shifting the blame to his attorneys. Mr. Hicks testified that Mr. Kudron

instructed him to omit his diamond earrings on Schedule B. (PX 17 at 15:14-21.) Mr.
Hicks further testified that prior to the 341 Meeting, Mr. Wonais instructed him to omit
the earrings from the Amended Schedule B and in his testimony at the 341 Meeting. (PX
17 at 23:12-19; *see also* PX 2 ¶ 42.[3])

### Trial Testimony of Former Attorneys

At trial, the Semrad Law Firm, through its attorneys, steadfastly denied the
Defendants' allegations. The attorneys testified that at no time did they instruct the
Defendants to conceal assets or to give false testimony at their 341 Meeting and Rule
2004 examinations. Their testimony is found to be credible.

### Undisclosed Assets and False Oaths

The Defendants owned the 14 carat white gold diamond earrings prior to and on
the Petition Date. (PX 2 ¶ 39.)

The Defendants failed to disclose the 14 carat white gold diamond earrings on
their Schedule B, on their Amended Schedule B, in their sworn testimony at the 341
Meeting, and at the Boston 2004 Examination. (PX 3 at page 13 of 51; PX 7; PX 15; PX
16.)

The Defendants owned the 14 carat white gold Neil Lane Bridal Set prior to and
on the Petition Date. (PX 1 ¶ 46.)

---

[3] In response to paragraph 42 of the U.S. Trustee's Complaint, the Defendants in their Amended
Answer (PX 2)  provided the following: "42. ADMIT, we had in our possession all of the jewelry
except for the women's watch as  of petition date. We asked John Wonais if one we had to
include the earnings watch in so many words we were told   no in so many words or if we
understood to list all assets whether they were paid for or not, the remaining jewelry   would
have been listed in our intake form as well as our schedules. [*sic throughout*]"

The Defendants failed to disclose the Neil Lane Bridal Set on their Schedule B, on their Amended Schedule B, in their sworn testimony at the 341 Meeting, and at the Boston 2004 Examination.

However, one month after the Rule 341 meeting of creditors was held, counsel for Debtors asserted they were reaffirming their debt to Kay Jewelers so they could keep the jewelry purchased from it. No evidence showed that it had been gifted, and reaffirmation in Chapter 7 was therefore a device to keep the jewelry. Debtors' counsel thereby knew or could and should have ascertained whether Debtors held and should have delivered the unscheduled jewelry to the Trustee. Debtors' testimony that they informed counsel about the jewelry was partially corroborated.

The Defendants also owned the Frederick Goldman Wedding Band prior to and on the Petition Date. (PX 1 ¶ 46.)

The Defendants failed to disclose the Frederick Goldman Wedding Band on their Schedule B, on their Amended Schedule B, in their sworn testimony at the 341 Meeting and at the Boston 2004 Examination. (PX 3 at UST Bate Page 0037; PX 7; PX 15; PX 16.)

The Defendants owned new furniture in the amount of $6,500 prior to and on the Petition Date. (PX 1 ¶¶ 51 and 52; PX 17 at 12:8-12.) The new furniture was purchased just weeks prior to the Petition Date.

The Defendants materially undervalued their interest in new furniture in the amount of $6,500 on their Schedule B, on their Amended Schedule B, in their sworn testimony at the 341 Meeting, and at the Boston 2004 Examination. (PX 3 at UST Bate Page 0037; PX 7; PX 15; PX 16.)

Mr. Hicks owned the Movado Series 800 Watch prior to and on the Petition Date. (PX 2 ¶ 42.)

22

The Defendants failed to disclose the Movado Series 800 Watch on their Schedule
B, on their Amended Schedule B, in their sworn testimony at the 341 Meeting, and at
the Boston 2004 Examination.

The Defendants failed to disclose the transfer of the Movado Bold Watch to
Tiffany Willis on their SOFA and in their sworn testimony at the 341 Meeting. (PX 3 at
UST Bate Page 0061; PX 15.)

The Defendants were charged with owning wearing apparel with an aggregate
amount greater than $3,000 as of the Petition Date. (PX 17 at 13:11-25.)

However, no reliable proof of value of that clothing was admitted.  Therefore, it
cannot be found that the Defendants materially undervalued their interest in wearing
apparel on their Schedule B, on their Amended Schedule B, or in their sworn testimony
at the 341 Meeting, and at the Boston 2004 Examination. (PX 3 at UST Bate Page 0037;
PX 7; PX 15; PX 16.)

The Defendants' failure to disclose their interests in jewelry, and substantial
furniture  constitute false oaths made in the Defendants' sworn Schedules, on the
Defendants' sworn SOFA, during the Defendants' sworn 341 Meeting testimony and
during the Defendants' sworn 2004 Examination testimony.

As of the date of trial, the Defendants failed to amend their Schedules to reflect
their foregoing undisclosed or materially undervalued assets and the SOFA to reflect
the transfer of the Movado watch.

The U.S. Trustee also argued that Mr. Hicks lied in certifying that he had taken a
credit counseling course pre-bankruptcy, resting that on some garbled testimony by
him.  However, he filed a certificate of credit counseling, the authenticity of which was
not contested.  It must be found that Mr. Hicks' certificate was accurate, not false.

# CONCLUSIONS OF LAW

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(J).

## BURDEN OF PROOF

The primary benefit of filing for bankruptcy under Chapter 7 is that the financial discharge gives the debtor a "fresh start." *See In re Chambers*, 348 F.3d 650, 653 (7th Cir. 2003). A discharge provided to a debtor recognizes the Congressional intent to provide the bankrupt with a "fresh start." *See Clean Cut Tree Service Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003).   Therefore, § 727(a) of the Bankruptcy Code is construed strictly against the objecting plaintiff and liberally in favor of the defendant. *In re Scott*, 295 F.3d 724, 736 (7th Cir. 2002). However, the privilege of a discharge is reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). A violation by the debtor of any provision of § 727 will completely bar a defendant's discharge. *Id*.

The U.S. Trustee, as Plaintiff in this adversary proceeding, has the burden of proof and must prove every element of his objection to discharge by a preponderance of the evidence. *See Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999) (holding that plaintiff must establish grounds for denial of discharge under § 727(a) by a preponderance of the evidence); *Bay State Milling Company v. Martin (In re Martin)*, 141 B.R. 986, 992 (Bankr. N.D. Ill. 1992); *see also* Fed. R. Bankr. P. 4005. However, once a plaintiff has established that the acts complained of occurred, the burden of production

24

shifts to the defendant who must then come forward with a credible explanation of his actions. *See In re Costello*, 299 B.R. at 894 (citing *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir. 1983)).

## COUNT 1: 11 U.S.C. § 727(A)(2)

To prevail on an objection to discharge under § 727(a)(2), the plaintiff must show that the defendant (1) transferred or concealed property, (2) that belongs to the estate, (3) within one year of the filing the petition; and (4) with the intent to hinder, delay or defraud a creditor of the estate. *See John Deere Company v. Broholm (In re Broholm)*, 310 B.R. 864, 878 (Bankr. N.D. Ill. 2004). The purpose of the statutory exception is to prevent the discharge of a defendant who tries to avoid paying his creditors by concealing or otherwise disposing of his assets. *See Blomberg v. Riley (In re Riley)*, 351 B.R. 662, 670 (Bankr. E.D. Wis. 2006). Although the burden of persuasion is on the plaintiff, the defendant cannot prevail if the plaintiff has made a prima facie case and the defendant is unable to explain his actions with credible evidence. *See Costello*, 299 B.R. at 894.

### Defendants Concealed Property

For purposes of § 727(a)(2)(A), a "concealment" involves "secreting of assets in the context of the bankruptcy proceeding such as hiding assets from creditors for the purpose of exempting a portion of the estate which would be payable to creditors through the bankruptcy proceeding." *Bartlett Bank & Trust Co. v. Wolmer (In re Wolmer)*, 57 B.R. 128, 131 (Bankr. N.D. Ill. 1986). In other words, concealment consists of "failing or refusing to divulge information to which creditors [are] entitled." *Neary v. Mosher (In re Mosher)*, 417 B.R. 772, 784 (Bankr. N.D. Ill. 2009). Transfer or concealment may occur even if creditors are not harmed by it. *See In re Costello*, 299 B.R. at 894 (citing *In re Scott*, 172 F.3d at 968). The court in *Britton Motor Service, Inc. v. Krich (In re Krich)* noted that "it is not necessary to show harm to creditors because of the concealment or that the

25

property concealed was even valuable, if there was intent to defraud." 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988). The court reasoned that "Courts will not measure the dishonesty of a bankrupt, once that be shown…the law forbids all efforts to put property beyond the reach of creditors, no matter what its value…" *Id.* (citing *Imperial Millwork, Inc. v. Steinberg (In re Steinberg)*, 4 B.R. 593, 597 (Bankr. D. Mass. 1980)).

In this case, the Defendants failed to disclose on their Schedule B and their Amended Schedule B, and at their 341 Meeting and Rule 2004 examinations: (1) 14 carat white gold diamond earrings; (2) a 14 carat white gold diamond Neil Lane Bridal Set; (3) a 10 carat white gold Frederick Goldman Wedding Band; (4) a Movado Series 800 Watch; and (5) substantial new furniture from Harlem Furniture. The Defendants also failed to disclose the transfer of a Movado Bold Watch to Tiffany Willis on their SOFA. The Lane Bridal set was disclosed to their lawyer a month after the 341 meeting.

The Defendants signed, under penalty of perjury, the First Declaration, the SOFA Declaration, and the Second Declaration, and attested that the information on the Schedules and SOFA was true and correct. Further, the Defendants verified, under oath, that their Schedules contained all of their assets and liabilities at the 341 Meeting. At the Boston 2004 Examination, Ms. Boston testified under oath that the information on Schedule B is true and correct. Despite their oaths, the Bankruptcy Documents and testimony at the 341 Meeting and 2004 Examinations contained material omissions.

The Defendants concealed many assets. The Defendants admitted that they owned jewelry and substantial furniture prior to the filing of the bankruptcy case, none of which was disclosed. Those undisclosed assets constitute property of the Defendants' bankruptcy estate. *See* 11 U.S.C. § 541(a).

By failing to disclose these assets in their sworn Schedules, in their sworn SOFA, and in their sworn testimony at the 341 Meeting and at 2004 Examinations, the

26

Defendants "[failed] to divulge information to which creditors [are] entitled." *Mosher*,

417 B.R. at 784. Therefore, by the definition set forth by the case law in this jurisdiction,

the Defendants concealed assets of the estate.   Given these facts, the concealment

requirement of § 727(a)(2) is satisfied.

### Property Concealed Was Property of the Estate

In this case, the second and third elements of § 727(a)(2) are disputed. The

Defendants filed their bankruptcy case on August 3, 2015. Moreover, the Defendants

admitted that they owned jewelry and furniture on the petition date. (PX 2 ¶¶ 36, 37, 38,

39, 40, 41, and 42.) The assets therefore belong to the estate. *See* 11 U.S.C. § 541(a).

Further, the record reflects that the concealment occurred within one year period

prior to the Petition Date, and occurred on the Defendants' sworn Schedules,

Defendants' sworn Amended Schedules, Defendants' sworn SOFA, in Defendants'

sworn testimony at the 341 Meeting and at the 2004 Examinations. Based on these facts,

the second and third elements of § 727(a)(2) are satisfied.

### Intent to Hinder, Delay or Defraud a Creditor of the Estate

Section 727(a)(2) requires proof of actual intent. *See Vill. Of San Jose v. McWilliams*,

284 F.3d 785, 790 (7th Cir. 2002).  Actual intent to hinder, delay, or defraud a creditor

may be proven by circumstantial evidence or by inference drawn from a defendant's

course of conduct. *See Costello*, 299 B.R. at 895. In *Filmar, Inc. v. White (In re White)*, the

opinion noted that because a defendant is "unlikely to directly testify that his intent was

fraudulent, the court may deduce fraudulent intent from all facts and circumstances of a

case." 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986). Therefore, courts must deduce fraudulent

intent by examining  the totality of facts and circumstances. *See Rogers v. Boba (In re*

*Boba)*, 280 B.R. 430, 435 (Bankr. N.D. Ill. 2002). Finally, courts are generally reluctant to

accept a defendant's "own self-serving statement of his intent as the best evidence of

that intent." *In re Costello*, 299 B.R. at 895 (citing *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 273 (9th Cir. BAP 1990)).

Intent to defraud involves a material representation that the debtor knows to be false or an omission that the debtor knows will create an erroneous impression. *See In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Reckless disregard for the truth is the equivalent of knowing that the representation is false and material. See Id. (citing *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992)). For example, a "debtor's awareness of an omitted asset but failure to list it in the debtor's bankruptcy schedules and statements can indicate that the debtor is recklessly indifferent to the truth." *In re Mosher*, 417 B.R. 772, 781 (Bankr. N.D. Ill. 2009) (internal citations omitted). Reckless disregard is the state of mind present when a debtor does not care about the truth or falsity of a statement. *See In re Chavin*, 150 F.3d at 728. A showing of reckless disregard for the truth is "sufficient to prove fraudulent intent." *Stamat v. Neary (In re Stamat)*, 635 F.3d 974, 982 (7th Cir. 2011).

In this proceeding, the Defendants exhibited a reckless disregard for the truth by filing documents that they knew or, should have known were incomplete and inaccurate. The Defendants, in their Answer to Plaintiff's Complaint, admitted that they owned the undisclosed assets as of the Petition Date. (PX 2 ¶¶ 39, 42; and PX 1 ¶¶ 44, 46, 57.) The Defendants further admitted that the assets were undisclosed or materially undervalued on their Schedule B, on their Amended Schedule B, and in their sworn testimony at the 341 Meeting. (PX 1 ¶¶ 15, 16, 17, 33). Despite these admissions, the Defendants signed, under penalty of perjury, the First Declaration, the SOFA Declaration, and the Second Declaration, and attesting that the information on their Schedules and SOFA is true and correct. At the Boston 2004 Examination, Ms. Boston testified under oath that the information on Schedule B was true and correct. It was not

28

until the Defendants were confronted with the truth at the Boston 2004 Examination
and the Hicks 2004 Examination that they finally admitted to the existence of the
previously undisclosed assets.  Despite having knowledge of their omissions and errors,
the Defendants failed to amend their Schedules to reflect their undisclosed assets and
undervalued assets.

Further, the chronology of events in this case is an important factor from which
fraudulent intent may be inferred.  The Defendants admitted that they met with the
Semrad Law Firm in June of 2015 for bankruptcy consultation. (PX 16 at 10:9-11:5.)  In
the roughly eight weeks between their first bankruptcy consultation and second
meeting with their attorneys, the Defendants purchased new furniture at Harlem
Furniture, along with a 14 carat white gold diamond Neil Lane Bridal Set and a
Frederick Goldman wedding band. Then, on August 3, 2015, the Defendants filed for
Chapter 7 bankruptcy, and failed to disclose the assets that were purchased within
weeks prior to the filing.  However, the Defendants included the liabilities owed to
these creditors on their Schedules to be discharged (except for two debts that they later
reaffirmed).  Here, the Defendants saw the bankruptcy system as an opportunity to buy
and keep luxury items without having to disclose and pay for them.

At a minimum, the Defendants exhibited a reckless disregard for the truth.  The
Defendants' numerous false oaths on their sworn First Declaration, on their sworn
Second Declaration, on their sworn SOFA Declaration, in their sworn testimonies at the
341 Meeting, at the Boston 2004 Examination, and at the Hicks 2004 Examination, and
the Defendants' failure to amend promptly their Schedules to show omitted or
materially undervalued assets indicate knowing and fraudulent conduct constituting a
reckless indifference to the truth. *See In re Krich*, 97 B.R. 919 (Bankr. N.D. Ill. 1988)
(holding that debtor's omissions of assets on his schedules and failure to amend

promptly schedules indicated a reckless indifference to the truth that justified denial of discharge). Therefore the need to prove intent to hinder, delay, or defraud requirement of § 727(a)(2) is satisfied.

Accordingly, the U.S. Trustee has proven by a preponderance of the evidence that the Defendants, with intent to hinder, delay, or defraud a creditor, transferred and concealed property of the estate within one year of the Petition Date. The Defendants' discharge will therefore be denied under § 727(a)(2).

### COUNT II: 11 U.S.C. § 727(A)(4)

Under § 727(a)(4), the court may deny a discharge if the debtor knowingly and fraudulently, in connection with the case, makes a false oath or account. *See* 11 U.S.C. § 727(a)(4). The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the defendant provides reliable information to those who have an interest in the administration of the estate. *See In re Costello*, 299 B.R. at 899. In *Baccala Realty, Inc. v. Fink (In re Fink)*, the court noted that "the trustee and the creditors have a right to information that will allow them to evaluate the case and administer the estate's property. [citations omitted] Thus, 'complete financial disclosure is a condition precedent to the privilege of discharge'" *In re Fink*, 351 B.R. 511, 525 (Bankr. N.D. Ill. 2006) (citing *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 359 (Bankr. N.D. Ill. 2001)) (internal citations omitted). It is not the "debtor's responsibility to decide which assets are to be disclosed to creditors; rather, his job is simply to address each question and answer it accurately and completely." *In re Costello*, 299 B.R. at 899 (emphasis added).

For the plaintiff to prevail under § 727(a)(4), he must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud;

30

and (5) the statement related materially to the bankruptcy case. *In re Fink*, 351 B.R. 511, 525 (Bankr. N.D. Ill. 2006). Although the burden of proof rests on the plaintiff at all times, the defendant cannot prevail if he is unable to offer credible evidence after the plaintiff has established a prima facie case. *See In re Costello*, 299 B.R. at 899.

### The Debtor Made Statements under Oath

The plaintiff must establish that the defendant made a statement under oath. *See In re Costello*, 299 B.R. at 899. For purposes of § 727(a)(4), a defendant's petition, schedules, statement of financial affairs, statements made at a § 341 Meeting, and testimony at the Bankruptcy Rule 2004 examination all constitute statements that are made under oath. *See In re Broholm*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). The filing of false schedules containing material omissions or representations with an intent to mislead creditors as to the defendant's financial condition constitutes false oaths under § 727(a)(4). *See Id*.

In this case, the Defendants made statements under oath. The Defendants stated on their Schedules that they did not own any jewelry, they owned only $500 in furniture. The Defendants stated on their SOFA that they did not transfer or make any gifts or contributions with an aggregate value in excess of $200 within the one year preceding the Petition Date. Additionally, the Defendants appeared at the 341 Meeting, and testified, under oath, that their Bankruptcy Documents contained all of their assets and liabilities. Lastly, the Defendants appeared at their respective 2004 Examinations and testified under oath. Therefore, the first element of § 727(a)(4) is satisfied.

### The Statements were False

As to the second element, the plaintiff must show that such statements were false. *See Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 360 (Bankr. N.D. Ill. 2002). "Whether a debtor made a false oath within the meaning of § 727(a)(4)(A) is a question

31

of fact." *In re Fink*, 351 B.R. at 525. A false oath may also include a knowing and fraudulent omission. *Id.; see also In re Krich*, 97 B.R. at 923 ("filing of false schedules with material omissions or misrepresentation with an intent to mislead creditors and the trustee as to the debtor's actual financial condition constitutes false oaths under section 727(a)(4)(A).").

Here, the Defendants failed to disclose to the Chapter 7 Trustee: (1) 14 carat white gold diamond earrings; (2) a 14 carat white gold diamond Neil Lane Bridal Set; (3) a 10 carat white gold Frederick Goldman Wedding Band; (4) a Movado Series 800 Watch and a Movado Bold Watch; and (5) substantial new furniture for Harlem Furniture. The Defendants also failed to disclose the transfer of a Movado Bold Watch to Tiffany Willis on their SOFA. The Defendants admitted that they owned these assets prior to and on the Petition Date. The Defendants therefore made statements on their Schedules and SOFA that are false and inaccurate.

Despite these omissions, the Defendants signed the First Declaration, Second Declaration, and SOFA Declaration attesting that the information on the Bankruptcy Document is true and correct. The Defendants then appeared at the 341 Meeting and testified under oath that their Bankruptcy Documents contained all of their assets and liabilities. At their respective 2004 Examinations, the Defendants testified that the disclosures on their Schedules were true and correct. The Defendants only acknowledged the falsity of the Schedules when confronted by counsel for the U.S. Trustee with the truth.

Based on the Defendants' admissions on the Answer and Amended Answer that they owned jewelry and furniture prior to and on the Petition Date (PX 1, PX 2), the Defendants made statements on the Bankruptcy Documents, at the 341 Meeting, and

2004 Examinations that were false. Therefore, the second element of § 727(a)(2) is satisfied.

### Defendants Knowingly and Fraudulently Made False Oaths

As to the third and fourth elements, the plaintiff must show that the defendant knowingly and fraudulently made a false statement. *See In re Costello*, 299 B.R. at 882. Fraudulent intent may be inferred from circumstantial evidence or by inference based on a course of conduct. *Id.* at 900 (citing *In re Bailey*, 145 B.R. at 928). Moreover, if a defendant's bankruptcy schedules and statements indicate that the defendant is recklessly indifferent as to the truth, the objecting plaintiff does not have to offer any additional evidence of fraud. *Id.* The cumulative effect of a number of false oaths by the defendant with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth. *See In re Costello*, 299 B.R. at 900 (citing *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 355 (Bankr. N.D. Ill. 1988)).

In the present case, the Defendants have knowingly and fraudulently made false oaths and accounts in both the Schedules and SOFA, as well as in their testimony at the 341 Meeting and the 2004 Examinations. The Defendants executed their Schedules and SOFA under penalty of perjury. (PX 4; PX 7 at 5 of 5.) The Defendants testified under oath at their 341 Meeting that their Schedules contained all of their assets and liabilities. However, despite their oaths, the Defendants failed to disclose their jewelry, some of which was purchased weeks before their bankruptcy filing. On Schedule and Amended Schedule B, the Defendants stated that they did not own any jewelry. Additionally, the Defendants undervalued their interest in substantial furniture that were also purchased weeks prior to the filing. Lastly, the Defendants failed to identify the transfer of the Movado Bold Watch to Tiffany Willis on the SOFA.

33

At their respective 2004 Examinations, the Defendants testified that the disclosures on their Schedules were true and correct. The Defendants only acknowledged the falsity of the Schedules when the deficiencies were discovered and identified. Therefore, the Defendants made numerous false oaths in their Schedules, in their SOFA, at their 341 Meeting and, at their 2004 Examinations about various different matters.

The Defendants knew or should have known that their Schedules, SOFA, and 341 Meeting testimony were false. Prior to filing of the Bankruptcy Documents, the Defendants initialed each and every section of the Bankruptcy Documents, specifically Schedule B. Thus, it strains credulity to even suggest that the Defendants did not know of the jewelry, and substantial furniture, or did not know their obligation to disclose same in connection with this bankruptcy case. Indeed, the Defendants scheduled debts related to the undisclosed assets so clearly were mindful of their existence at the time they filed their petition and schedules.

Additionally, the Defendants had the requisite intent to defraud. As set forth in the discussion of § 727(a)(2), the Defendants exhibited a reckless disregard for the truth and accuracy of their Schedules, SOFA, and testimony at both the 341 Meeting and the 2004 Examinations. Again the Defendants signed the Schedules and SOFA under penalty of perjury that they authorized to be filed with this Court and that they knew or should have known were inaccurate and incomplete. The cumulative effect of the Defendants' many false statements indicates knowing and fraudulent conduct constituting a reckless indifference to the truth in their bankruptcy case. The admitted omissions illustrate the Defendants' reckless disregard and indifference to the truth, and, as a result, establish their intent to defraud by making these false oaths.

Based on these facts, the third and fourth elements of § 727(a)(4) are satisfied.

34

### False Oaths Related Materially to the Bankruptcy Case

As to the fifth element, the plaintiff must show that the false statements made by the defendants relate materially to the bankruptcy case. *See In re Costello*, 299 B.R. at 900. In determining whether or not an omission is material, the "issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *In re Stamat*, 635 F.3d at 982 (7th Cir. 2011). "[T]he test for materiality of the subject matter of a false oath is whether it 'bears a relationship to the bankruptcy's business transaction or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Bailey*, 147 B.R. at 162 (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also In re Stamat*, 635 F.3d at 982.  Materiality is a real requirement.  The scheduling of ones shirts, underwear, and junk jewelry will usually be immaterial because it is not detrimental to creditors.

The Defendants' false oaths were material to their bankruptcy case. The materiality issue in this case is not the Defendants' degree of disclosure of their assets, but rather, the total and complete failure of the Defendants to disclose the existence and extent of their jewelry and furniture.  Clearly, valuable jewelry and furniture that were purchased before the filing of the bankruptcy relates to the estate, involves the discovery of assets, or the existence and disposition of their property. *See In re Costello*, 299 B.R. at 900.  Further, upon discovery of the assets, the Chapter 7 Trustee sought and obtained an order from this Court requiring that the Defendants turn over property of the estate which may lead to distributions to creditors.  To date, the Defendants have refused to comply except for limited compliance  with the Court's order in open Court.

Therefore, the fifth element of § 727(a)(4) is satisfied.

In sum, the Plaintiff has proven by a preponderance of the evidence that the Defendants made statements under oath; the statements were false; the Defendants

35

knew the statements were false; the Defendants made the statements with intent to defraud; and the statements related to the bankruptcy case in a material way. The Defendants' omissions of the jewelry from, and undervaluation of the furniture on the Schedules, SOFA, as well as in their testimony at the 341 Meeting and 2004 Examinations were statements made under oath that the Defendants knew or should have known were false, and were made with, at least, a reckless disregard for the truth, about matters that were material to their bankruptcy case.

Accordingly, the Defendants' discharge will be denied under § 727(a)(4).

## DEFENDANTS' UNSUBSTANTIATED DEFENSE

Instead of making amendments and correcting the Bankruptcy Documents, the Defendants blame lawyers of The Semrad Law Firm for the omissions from their Schedules, SOFA, and their false testimony at the 341 Meeting and the 2004 Examinations. The Defendants' allegations include: (1) lawyers of the Semrad Law Firm (1) filed false and unauthorized schedules; (2) assertions that instructed the Defendants to omit assets from their Schedules and at the 341 Meeting; (3) failed to relay information to the Chapter 7 Trustee; and (4) instructed the Defendants not to list assets that they intended to reaffirm on their Schedules. Only with regard to the jewelry involved in a reaffirmation agreement was that violation partially corroborated.

Debtors in bankruptcy "cannot rely on the advice of counsel defense regarding errors in the Schedules where the [d]ebtor has declared under penalty of perjury that he has read the Schedules, and to the best of his knowledge they were true and correct." *In re Jakovljevi-Ostojic*, 517 B.R. 119, 128 (Bankr. N.D. Ill. 2014). A debtor in bankruptcy "may not shirk its responsibility to determine what is or is not appropriate put forth on its schedules." *Id.* at 128.

36

These Defendants could not shirk their duty to be forthcoming and truthful when they signed the First Declaration, the SOFA Declaration and Second Declaration attesting to the truthfulness and completeness of the Schedules and SOFA. Secondly, the Defendants testified to the truthfulness and completeness of the Schedules at the 341 Meeting when they knew that the Schedules were false. Lastly, the Defendants testified untruthfully at their 2004 Examinations. Ms. Boston was specifically asked about the truthfulness of each item on Schedule B, and she unequivocally stated that the information on Schedule B was correct. Ms. Boston and Mr. Hicks later changed their testimony when they were confronted with documents to prove they were not being truthful. Their testimony at trial was not credible.

Defendants should be held accountable for their false oaths. The operation of the bankruptcy system "…hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *In re Stamat*, 635 F.3d at 974 (quoting *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 496 (7th Cir. 2007)). These Defendants were not truthful and did not make full disclosures on their Schedules, SOFA, at the 341 Meeting, and at the 2004 Examinations.

Furthermore, the reliance on the "counsel defense" here may serve as a mitigating factor to the Defendants' fraudulent conduct only if counsel has been fully informed and reliance is reasonable. *See Sicherman v. Rivera (In re Rivera)*, 338 B.R. 318, 326 (Bankr. N.D. Ohio 2006). In this case, the Defendants have proffered only limited credible evidence to demonstrate that The Semrad Law Firm was fully informed of any relevant facts.

## CONCLUSION

Despite the several unproven parts of Plaintiff's case (value of clothing, some jewelry disclosed to their attorneys, and the Credit Counseling Certificate issued to Hicks), the remaining case against the Defendants is substantial.  For the forgoing reasons, the Court will separately grant judgment in favor of the U.S. Trustee and sustain the objection to discharge under § 727(a)(2) under Count I and § 727(a)(4) under Count II.  Separate Judgment Orders denying discharge shall be entered pursuant to Rule 9021 Fed.R.Bankr.P.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of March, 2017

MAR 2 4 2017

38